1
2
3
4
5
6
7

8        **IN THE UNITED STATES DISTRICT COURT**

9        **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   AMADOR GONZAGA,                          CASE NO. CV F 05-0452 OWW LJO

12              Plaintiff,                    **FINDINGS AND RECOMMENDATIONS ON**
                                              **SOCIAL SECURITY COMPLAINT**
13        vs.                                 (Docs. 28, 29.)

14   JO ANNE B. BARNHART,
     Commissioner of Social
15   Security,

16              Defendant.
                                        /
17

18                          **INTRODUCTION**

19        Plaintiff Amador Gonzaga ("plaintiff") seeks this Court's review of an administrative law judge's

20   ("ALJ's") decision that plaintiff is neither disabled nor entitled to disability insurance benefits under

21   Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433.  Based on review of the Administrative

22   Record ("AR") and the papers of plaintiff and defendant Jo Anne B. Barnhart, Commissioner of Social

23   Security ("Commissioner"), this Court RECOMMENDS to DENY plaintiff's request to reverse the

24   Commissioner's decision to deny plaintiff disability insurance benefits or to remand for further

25   proceedings.

26                          **BACKGROUND**

27                  **Plaintiff's Personal Background**

28        Plaintiff is age 47 and has a 10th grade education and past relevant work experience as a mechanic

1   at a cloth factory.  (AR 108, 167, 190, 449, 450.)

2   **Administrative Proceedings**

3   *Plaintiff's Prior Application*

4   On December 13, 2000, plaintiff filed a disability insurance benefits application.  (AR 107.)  An

5   ALJ decision denied plaintiff disability insurance benefits but with its September 26, 2002 order, the

6   Social Security Administration's ("SSA's") Appeals Council vacated decision and remanded the case

7   to an ALJ for further proceedings to complete the record.  (AR 107, 130.)  The ALJ conducted a January

8   6, 2003 supplemental hearing and issued a February 12, 2003 decision to find that plaintiff has the

9   residual functional capacity for medium work and is not disabled.  (AR 107, 135, 136.)

10  *Plaintiff's Current Application*

11  On May 19, 2003, plaintiff protectively filed his current application for disability insurance

12  benefits to claim disability since November 15, 1999 due to low back pain and stomach ulcer.  (AR 107,

13  167.)  With its July 25, 2003 Notice of Disapproved Claims, SSA denied plaintiff's claim and

14  determined that plaintiff's medical condition is not severe enough to prevent him to work.  (AR 151.)

15  On August 18, 2003, plaintiff filed his Request for Reconsideration to claim that his lower back pain

16  radiates to his head, neck, upper back, shoulders, buttocks and legs.  (AR 155.)  With its Notice of

17  Reconsideration, SSA again denied plaintiff's claim and determined that plaintiff's condition is not

18  severe enough to keep you from working.  (AR 156.)

19  On October 24, 2003, plaintiff filed his Request for Hearing by Administrative Law Judge to

20  claim constant lower back pain which radiates to his head, neck and shoulders.  (AR 160.)  Plaintiff

21  appeared at a September 9, 2004 ALJ hearing, and after the ALJ advised plaintiff of rights and benefits

22  of counsel, plaintiff elected to proceed without counsel.  (AR 107.)  The ALJ issued his September 27,

23  2004 decision to conclude that plaintiff is not disabled and has the residual functional capacity to engage

24  in medium work limited to occasional stooping and bending.  (AR 110-112.)[1]

25  On October 6, 2004, counsel was appointed for plaintiff (AR 100), and plaintiff submitted to the

26

27  [1]      The ALJ noted that the February 12, 2003 ALJ decision became "administratively final and res judicata"
    to create "a presumption of continuing non-disability which claimant can overcome by proving 'changed circumstances'
    indicating a greater disability."  (AR 107-108.)  The ALJ further noted that plaintiff met "his burden of proving 'changed

28  circumstances' by introducing a new impairment since February 12, 2003."  (AR 108.)

2

Appeals Council his Request for Review of Hearing Decision/Order to claim that he is "totally disabled." (AR 98.) With a January 29, 2005 letter, plaintiff provided the Appeals Council additional medical records. (AR 21-95.) On February 3, 2005, the Appeals Council denied plaintiff's request for review. (AR 18.) On March 14, 2005 and May 11, 2005, the Appeals Council set aside its review denial and after considering plaintiff's additional information, denied again plaintiff's request for review to render the ALJ's September 27, 2004 decision subject to this Court's review. (AR 5, 10.)

**Medical History And Records Review**

Plaintiff received treatment for his November 19, 1998 on-the-job injury which plaintiff suffered when lifting a machinery piece. (AR 211, 223.)

***Health Valley Medical Group, Inc.***

Plaintiff treated with Health Valley Medical Group, Inc., a family practice. A 1998 note entry reflects that plaintiff complained of low back pain and had hurt his back lifting about 50 pounds on November 19, 1998. (AR 383.) Plaintiff complained of lower back and right shoulder pain in early 1999. (AR 384, 386.) Beginning in 1999, plaintiff received treatment to control his diabetes mellitus. (AR 323, 331- 334, 336-338, 340, 342, 349-351, 353, 355, 388-393, 400, 401.) Notes reflect that plaintiff's diabetes mellitus was controlled and stable and that plaintiff incurred back pain on bending. (AR 347, 355, 392, 393, 395.) Other notes reflect that plaintiff's diabetes was uncontrolled with his non-compliance and when plaintiff was "not watching diet." (AR 390, 396.) On December 24, 2001, plaintiff was assessed with depression and prescribed Zoloft 50 mg. (AR 340.) November 7, 2002 notes reflect that Zoloft helped. (AR 334.) On October 5, 2004, plaintiff complained of neck and back pain. (AR 399.)

***Brian E. Wickert, D.C., Treating Chiropractor***

Plaintiff treated with chiropractor Brian E. Wickert, D.C. ("Dr. Wickert"). Dr. Wickert's June 28, 1999 notes indicate that plaintiff's medication provided little relief. (AR 240.) On July 12, 1999, Dr. Wickert released plaintiff from work until August 3, 1999 and precluded lifting more than 15 pounds, carrying more than five pounds, sitting or standing more than 30 minutes, pushing, pulling and repetitive bending and twisting. (AR 236.) On September 13, 1999, Dr. Wickert continued plaintiff on light duty until September 28, 1999 with neither heavy lifting nor repetitive bending/twisting. (AR 234.)

On September 27, 1999, Dr. Wickert precluded plaintiff based on plaintiff's severe low back pain from prolonged standing or sitting, lifting more than 10 pounds, and excessive or repeated bending, twisting, stooping, pulling, pushing, and reaching above the shoulder.  (AR 230.)  On October 11, 1999, Dr. Wickert determined that plaintiff was able to return to light work as of October 28, 1999.  (AR 226.)

Dr. Wickert prepared an October 12, 1999 report to note plaintiff's complaints of intermittent back pain which plaintiff rated as six on a scale of one to 10 and occasional mild ache to plaintiff's right shoulder.  (AR 223.)  Dr. Wickert diagnosed lumbar intervertebral disc syndrome complicated by spondylolisthesis, lumbosacral sprain strain, thoracic sprain strain, cervical sprain strain, and right shoulder strain/sprain.  (AR 224.)  Dr. Wickert noted plaintiff's thrice weekly chiropractic manipulative therapy with electronic muscle stimulation, heat and flexion distraction, thrice daily stretching exercises of hamstrings and gluteal muscles, and twice daily walking of 45 minutes.  (AR 224.)

On October 25, 1999, Dr. Wickert released plaintiff to his regular work duties effective November 4, 1999. (AR 221.)  On October 27, 1999, Dr. Wickert prescribed a TENS unit for plaintiff. (AR 220.)  In his February 28, 2000 letter, Dr. Wickert noted that plaintiff improved with prescribed exercises and that plaintiff rated his intermittent lower back pain as five on a one to 10 scale.  (AR 216.) Dr. Wickert noted that when plaintiff returned to work, his lower back pain elevated up to an eight on a one to 10 scale and became frequent.  (AR 216.)

### *Jesse Liscomb, M.D., Treating Physician*

Plaintiff treated with Jesse Liscomb, M.D., in connection with is workers' compensation claim. On August 25, 1999, plaintiff complained of low back pain, mobility loss, and infrequent radiating pain. (AR 209.)  Plaintiff indicated that his lower back felt a little better and that he experienced decreased right lower extremity pain.  (AR 209.)  Dr. Liscomb diagnosed low back pain and spasms.  (AR 209.) On September 3, 1999, Dr. Liscomb diagnosed low back pain and spasms.  (AR 207.)  Dr. Liscomb found soft tissues of plaintiff's low back had normal texture and tension but that his spinal column was "thick, stiff, immobile feel."  (AR 208.)  Dr. Liscomb noted that plaintiff "continues to do well with 8 hours of modified work duty" and "needs conscientious home stretching and flexibility program." (AR 208.)

/ / /

### *Tomas B. Rios, M.D., Treating Internist*

Plaintiff treated with internist Tomas B. Rios, M.D. ("Dr. Rios"), in connection with his workers' compensation claim. On November 15, 1999, plaintiff complained of continued lower back pain which he described as "throbbing, stabbing" and lasting up to several hours. (AR 308.) Dr. Rios' examination revealed that plaintiff performed heel toe walk without difficulty or differential weakness. (AR 309.) Dr. Rios noted diffuse tenderness in the paralumbar region with no palpable muscle spasms. (AR 309.) Dr. Rios further noted that straight leg raising elicited lower back pain complaints but no evidence of dural sheath irritation and that Faber's was negative for hip or sacroiliac pain. (AR 309.) Dr. Rios found that plaintiff's upper and lower extremity ranges of motion "were full and unrestricted." (AR 309.) Dr. Rios diagnosed status post musculoligamentous sprain/strain of the lumbosacral spine, superimposed on underlying disc disease and lumbar spondylosis, cumulative from November 19, 1998, mechanical back pain, and rule out internal disc derangement L4-5. (AR 310, 312.) Dr. Rios returned plaintiff to work with a 25-pound lift/carry restriction and preclusion of repetitive bending and stooping. (AR 312.) Dr. Rios' treatment plan included plaintiff's current Non-Steroid Anti-Inflammatory Drugs ("NSAID") and physical therapy. (AR 311.)

On December 15, 1999, plaintiff continued his subjective lower back complaints which he characterized as "constant ache or pressure." (AR 306.) Plaintiff claimed heavy lifting or repetitive bending caused increased discomfort. (AR 306.) Dr. Rios' examination revealed normal station and gait and tenderness as the L4-5, L5-S1 region with no overt muscle spasms. (AR 306.) According to Dr. Rios, straight leg raising elicited low back pain but no sheath irritation. (AR 306.) Dr. Rios diagnosed lumbosacral strain/sprain, degenerative disc disease L4-5, and mechanical back pain. (AR 306.) Dr. Rios continued his "conservative" treatment of NSAID and physical therapy and modified work through January 15, 2000 of no lifting more than 25 pounds and no repetitive bending or stooping. (AR 306.)

On January 18, 2000, Dr. Rios presented with complaints similar to those on December 15, 1999. (AR 303.) Dr. Rios' examination continued to reveal diffuse tenderness in the paralumbar region with no overt muscle spasms. (AR 303.) Straight leg raising again elicited low back pain but no dural sheath irritation. (AR 303.) Dr. Rios noted that recent diagnostic imaging revealed marked degenerative

change, including degenerative disc and joint disease with disc protrusions at L4-5 and L5-S1 and probable L5 spondylolysis. (AR 303.) Dr. Rios diagnosed lumbosacral strain/sprain, degenerative disc disease L4-5, and lumbar disc herniation L4-5 and L5-S1. (AR 303.) Dr. Rios continued his "conservative" treatment of NSAID medication and physical therapy. (AR 303.) Dr. Rios further continued plaintiff's modified work of no lifting/carrying more than 25 pounds and no repetitive bending/stooping through February 18, 2000. (AR 303.) On February 18, 2000, Dr. Rios noted plaintiff's diminishing complaints of lower back pain. (AR 301.) Dr. Rios' examination revealed similar results to those on January 18, 2000, and Dr. Rios continued his most recent diagnosis and "conservative" treatment, including Celebrex 200 mg. (AR 301.) Dr. Rios increased plaintiff's lift/carry restriction to 40 pounds and continued to restrict repetitive bending and stooping. (AR 301.)

Dr. Rios prepared a March 21, 2000 permanent and stationary report to note that plaintiff's pain had reached "a linear plateau, with no further improvement or deterioration being identified." (AR 294.) Dr. Rios' examination continued to reveal palpable tenderness at the lumbosacral junction with no muscle spasms. (AR 297.) Straight leg raising again elicited complaints of diffuse lower back pain but no dural sheath irritation. (AR 297.) Dr. Rios further noted range of motion restrictions in the lumbar flexion and extension planes with no muscular atrophy or neurological deficits. (AR 298.) Dr. Rios found plaintiff permanent and stationary. (AR 298.) Dr. Rios diagnosed status post musculoligamentous strain/sprain of the lumbosacral spine, superimposed on underlying degenerative disc disease and joint disease and spondylosis, lumbar disc herniation at L4-5 and L5-S1, and mechanical back pain. (AR 298.) Dr. Rios characterized plaintiff's subjective disability as "constant slight lower back pain that elevates to occasionally severe" with heavy lifting and repetitive bending or stooping. (AR 298.) Dr. Rios precluded plaintiff from heavy work in that plaintiff has lost approximately 50 percent of his pre-injury capacity for lifting, bending, stooping, lifting, running, jumping, climbing and other activities of comparable physical effort. (AR 299.) Dr. Rios assessed future medical care of NSAID medication, physical therapy, spinal manipulation, TENS unit, epidurals and possible surgical intervention. (AR 299.)

On May 16, 2000, Dr. Rios continued to note plaintiff's chronic recurrent episodes of lower back pain with diffuse tenderness at the lumbosacral junction but no palpable muscle spasms. (AR 292.) Dr.

6

Rios continued his diagnosis of lumbosacral strain/sprain, degenerative disc disease L4-5, and lumbar disc herniation L4-5 and L5-S1.  (AR 292.)  Dr. Rios again precluded lifting/carrying more than 40 pounds and bending or stooping.  (AR 292.)  On July 14, 2000, Dr. Rios continued with his May 16, 2000 examination findings, diagnosis and work preclusions and noted that plaintiff's low back pain responds to conservative treatment.  (AR 291.)  During the remainder of 2000, Dr. Rios made similar findings and continued his diagnosis and work preclusions.  (AR 288-290.)  On October 23, 2000, Dr. Rios noted plaintiff's continued use of Vioxx 25 mg. and Ultram for pain management.  (AR 289.)

Dr. Rios' early 2001 examinations revealed tenderness in the lumbosacral region without spasms. (AR 286, 287.)  Straight leg raising again elicited low back pain but failed to reveal dural sheath irritation.  (AR 286, 287.)  Dr. Rios continued his diagnosis of lumbosacral strain/sprain, degenerative disc disease L4-5, and lumbar disc herniation L4-5 and L5-S1.  (AR 287.)  Dr. Rios further continued his preclusions of lifting/carrying more than 40 pounds and repetitive bending or stooping.  (AR 287.) On April 13, 2001, Dr. Rios recommended epidural facet injections.  (AR 284.)

Dr. Rios' July 31, 2001 examination again revealed diffuse tenderness at the lumbosacral junction without spasms, generally full range of motion, and straight leg raising eliciting low back pain without dural sheath irritation.  (AR 279.)  Dr. Rios continued to diagnose lumbosacral strain/sprain, degenerative disc disease L4-5, and lumbar disc herniation L4-5 and L5-S1.  (AR 279.)  Dr. Rios modified plaintiff's restrictions to no heavy lifting.  (AR 279.)  Dr. Rios' examinations during the remainder of 2001 revealed spine to be midline with focal pain in the lumbosacral junction, no spasms, and straight leg raising eliciting low back pain with no dural sheath irritation.  (AR 276-278.)  Dr. Rios continued his diagnosis and preclusion of no heavy lifting.  (AR 276-278.)  Dr. Rios started and continued plaintiff on Ultram 50 mg.  (AR 276-278.)

During 2002, Dr. Rios' examinations revealed spine to be midline, focal and diffuse tenderness at the lumbosacral junction, normal station and gait, no spasms, and straight leg raising eliciting low back pain but no dural sheath irritation. (AR 273-275.)  Dr. Rios continued his diagnosis of lumbosacral strain/sprain, degenerative disc disease L4-5, and lumbar disc herniation L4-5 and L5-S1 and his preclusion of no heavy lifting.  (AR 269, 270, 273-275.)  As of December 31, 2002, Dr. Rios noted plaintiff's inability to tolerate NSAID medications due to gastrointestinal discomfort.  (AR 269.)

During 2003, Dr. Rios' examinations revealed midline spine, normal station and gait, diffuse tenderness in the thoraco-lumbar spine and the lumbosacral region, absence of spasms, and restricted lumbosacral range of motion in the flexion/extension plane. (AR 267, 268.) Dr. Rios continued his diagnosis of lumbosacral strain/sprain, degenerative disc disease L4-5, and lumbar disc herniation L4-5 and L5-S1 and his preclusion of no heavy lifting. (AR 267, 268.) Dr. Rios noted plaintiff's medications of Ultram, Naprosyn 500 mg, and Zantac. (AR 268.) Dr. Rios added no repetitive bending or stooping to his no heavy lifting preclusion. (AR 267, 268.)

Dr. Rios completed a November 5, 2004 Compete Medical Report (Physical) to note plaintiff's current pain management of Vicodin and Tramodol. (AR 365.) Dr. Rios noted plaintiff's loss of lumbar range of motion and Dr. Rios' diagnosis of lumbrosacral sprain and situational depression/anxiety. (AR 365.) Dr. Rios described his treatment as "medication/physical therapy/exercise" and noted a prognosis of "poor – permanent residuals are present." (AR 365.) Dr. Rios assessed that plaintiff is able to: (1) lift/carry up to 10 pounds continuously, up to 20 pounds frequently, and up to 50 pounds occasionally; (2) sit, stand and/or walk four hours in an eight-hour workday and/or without interruption; (3) use his feet and hands without limitation; (4) reach, handle and feel frequently; (5) balance, crouch and push/pull occasionally. (AR 366-368.) Dr. Rios precluded plaintiff from climbing, kneeling, crawling, heavy lifting and repetitive bending and stooping. (AR 368, 370.) As of February 2, 2005,Dr. Rios noted that plaintiff "is not required to lay down 1-2 hours/day." (AR 370.)

### *Gilbert J. Kucera, M.D., Consultative Physician*

Orthopedic surgeon Gilbert J. Kucera, M.D. ("Dr. Kucera"), conducted a September 19, 2000 agreed medical examination in connection with plaintiff's workers' compensation claim. (AR 242.) Dr. Kucera noted plaintiff's work history as a mechanic repairing textile machines and equipment and lifting more than 100 pounds. (AR 242.) Dr. Kucera observed that plaintiff had not worked since November 1999. (AR 242.) Plaintiff rated his pain as nine on a one to 10 scale. (AR 243.) Plaintiff claimed constant, but intermittent dull aching and sharp stabbing low back pain and radiating leg pain in his mid thigh with leg numbness. (AR 244.) Plaintiff noted that he experienced pain from walking on stairs/hills and prolonged sitting, standing, lifting and/or bending. (AR 244.)

Dr. Kucera's lumbar spine examination revealed negative percussion of the spinous processes,

tenderness to palpation of paravertebral muscles at L4-5 central, and absence of sacroiliac notch tenderness.  (AR 247.)  As to plaintiff's lower extremities, Dr. Kucera noted absence of plaintiff's limp, normal squats but presence of lower back pain.  (AR 248.)  Dr. Kucera found plaintiff's lower back subjective factors "valid and should be rated as constant minimal at rest becoming intermittent and slight with ordinary activities, increasing to occasional moderate with repetitive, prolonged, heavier work activities."  (AR 249.)  Dr. Kucera noted objective factors of: (1) moderate restriction of lumbar motion; (2) slight weakness, L4-5 central, secondary to pain; (3) come-and-go numbness, bilateral posterior thighs and left lateral thigh; (4) December 3, 1998 lumbar x-ray revealing bilateral par interarticularis at L-5, intact disc spaces and small degenerative osteophytes; and (5) January 11, 2000 magnetic resonance imaging ("MRI") of lumbar spine revealing degenerative disc disease, L4-5 posterior disc protrusion.  (AR 250.)

Dr. Kucera precluded plaintiff from heavy lifting and diagnosed a November 1998 lower back injury with sprain, strain, no underlying asymptomatic pars defect at L5 with early degenerative changes rendered symptomatic by injury, and absence of radiculopathy.  (AR 250.)  Dr. Kucera observed that plaintiff "has a chronic ongoing condition with his lower back and lower extremity, and would be expected to have ongoing difficulty in the future with occasional recurrences."  (AR 251.)  Dr. Kucera did not recommend surgery and precluded plaintiff from his past machinist work.  (AR 251.)

Dr. Kucera re-examined plaintiff on January 7, 2003.  (AR 257.)  Plaintiff noted to Dr. Kucera that twice weekly massages were "temporarily helpful" and that he had completed a computer technician vocational rehabilitation retraining program.  (AR 258.)  Plaintiff claimed his pain was 10 on a one to 10 scale and that he was able to: (1) sit for up to one hour; (2) stand up to 10 minutes; (3) walk up to 20 minutes; (4) lie down up to four hours; and (5) lift up to 15 pounds.  (AR 258-259.)  Plaintiff noted his constant dull lower back aching with sharp pain that radiates to his calves and neck, leg numbness and tingling, frequent limping, pain from walking on stairs and hills and with prolonged sitting, standing, lifting and bending.  (AR 259.)  Plaintiff noted he did not use orthopedic assistive devices.  (AR 259.)

Dr. Kucera's lumbar spine examination revealed slight right tenderness, 90 percent motion with slight discomfort on extremes of motion, normal posture, tenderness to palpation of paravertebral muscles, and absence of scoliosis, increased muscle tonus, tenderness to light touch, and sacroiliac notch

tenderness.  (AR 260.)  Dr. Kucera observed a slight left limp.  (AR 261.)  Dr. Kucera's x-rays revealed plaintiff's normal pelvis and as to plaintiff's lumbar spine, slight spurring anterior L2-3, disc spaces well-maintained, and pre-existing anterior compression L1.  (AR 262.)  Dr. Kucera observed that plaintiff's "subjective factors in the lower back are valid and should be rated as constant minimal at rest, becoming intermittent slight with ordinary activities, increasing to intermittent moderate with repetitive, prolonged heavier work activities.  (AR 263.)  Dr. Kucera noted objective factors of: (1) moderate restriction of lumbar motion; (2) 50 percent restriction of squatting with pain in the lower back; (3) slight weakness of the lower back secondary to pain; and (4) decreased sensation, generalized lower extremities bilaterally, non-anatomic; (5) January 7, 2003 x-rays revealing intact disc spaces and small to moderate degenerative osteophytes on L2 and L3; and (6) January 11, 2000 MRI revealing degenerative disc disease.  (AR 263.)

Dr. Kucera precluded plaintiff from his machinist occupation, heavy lifting and repeated bending and stooping and diagnosed lower back sprain/strain, underlying asymptomatic pars defect L5, early degenerative changes and absence of peripheral radiculopathy.  (AR 263, 264.)  As for future care, Dr. Kucera noted that plaintiff's chronic lower back condition would require pain or anti-inflammatory medication, TENS unit use and a home exercise program.  (AR 264.)  Dr. Kucera concluded that plaintiff's "condition in the lower back is slightly worsened.  He is in need of maintenance conservative treatment and I see no need for surgical treatment at this time."  (AR 265.)

### *Calvon Voong, M.D., Treating Physician*

Dr. Rios referred plaintiff to Calvon Voong, M.D. ("Dr. Voong"), a diplomate, American Board of Pain Medicine.  (AR 280.)  On May 18, 2001, Dr. Voong evaluated plaintiff for an epidural facet joint injection and attributed plaintiff to state "he would like to be able to return to some form of work."  (AR 280.)  Dr. Voong's examination revealed normal strength and sensation to upper extremities, localized pain to the midline of the back at L4-5 and L5-S1, pain with palpation of the sacroiliac ligament, and negative straight leg raise.  (AR 282.)  Dr. Voong recommended evaluation by an orthopaedic surgeon or neurosurgeon regarding spondylolysis and daily abdominal exercise if back pain results from spondylolysis.  (AR 283.)  Dr. Voong further recommended "pain medication management" in that a facet joint injection is not indicated."  (AR 283.)

*Michael A. Florio, M.D., Consultative Orthopaedist*

Orthopaedist Michael A. Florio, M.D. ("Dr. Florio"), conducted an August 24, 2001 consultative examination of plaintiff.  (AR 253.)  Dr. Florio's musculoskeletal examination of plaintiff's back revealed plaintiff's good posture, normal spine curves, and absence of atrophy, swelling or muscle tightness.  (AR 254.)  Dr. Florio found fair functional use of plaintiff's back and 2 + tenderness to palpation over the lumbar spine, lumbosacral joints and sciatic nerves.  (AR 254.)  Dr. Florio pointed out that plaintiff's lumbar spine x-rays revealed narrowing of the intervertebral disc space from L1 to L4 with ventral spur formation or osteophyte formation around each of the vertebral bodies and spondylolysis L5 vertebral body.  (AR 254.)  Dr. Florio noted that an MRI revealed degenerative disc disease at L1-2-3-4 and the absence of posterior impingement of the disc into the spinal canal area and nerve root or spinal cord compression.  (AR 254.)  Dr. Florio observed that although plaintiff rated back pain as 10 and leg pain as eight on a one to 10 scale, plaintiff "did not appear to be in any discomfort at any time during the examination."  (AR 255.)

Dr. Florio diagnosed chronic low back sprain, degenerative disc disease lumbar spine and spondylolysis lumbar spine.  (AR 255.)  Dr. Florio recommended anti-inflammatory medications and the McKenzie exercise program to help strengthen his back and trunk muscles.  (AR 255.)  Dr. Florio found no indication for a surgical procedure.  (AR 255.)  As to subjective factors, Dr. Florio commented that "there is nothing at all to indicate his symptoms would be that severe.  He appears to be a significant symptom magnifier."  (AR 255.)  Dr. Florio found:

> His lack of motion is directly related to his noncompliance and tenderness is not an objective finding.  His back examination, for all intents and purposes, is normal.  His MRI shows degenerative discs, but there does not appear to be any impingement into the spinal canal creating any pressure on the nerve roots or spinal cord.
>
> There is a distinct lack of abnormal objective findings to consider this patient totally disabled.  (AR 255.)

Dr. Florio considered plaintiff "a medical candidate for vocational rehabilitation" and precluded plaintiff from "very heavy work."  (AR 256.)  Dr. Florio concluded:

> The patient's future medical care will be conservative and consist primarily of an exercise program and medication.
>
> . . . Mr. Gonzaga appears to have symptoms that are far and away greater than what one would expect from the physical examination and abnormal objective findings.  He tends

1   to greatly overstate his symptoms and his ranking of his symptoms on a scale of 1-10 as
2   a 10 is absurd to say the least.  The patient is probably unmotivated and the probability
    of getting him back into the work force is minimal.  (AR 256.)

3   ### *Francisco E. Montalvo, M.D., Ph.D., Treating Psychiatrist*

4   Psychiatrist Francisco E. Montalvo, M.D., Ph.D. ("Dr. Montalvo"), conducted a June 8, 2004

5   comprehensive mental status examination in connection with plaintiff's workers' compensation claim.

6   (AR 360.)  Plaintiff noted his feeling depressed, forgetfulness, decreased libido, nightmares, irritability,

7   poor concentration, and withdrawal.  (AR 361.)  Dr. Montalvo diagnosed major depression – severe and

8   assessed a current 55 Global Assessment of Functioning ("GAF") and a best past year 80 GAF.  (AR

9   362.)  Dr. Montalvo recommended "basic supportive psychotherapeutic intervention to help reinforce

10  use of higher level defenses, restore Mr. Gonzaga's self esteem and encourage a return to more

11  productive functioning in combination with carefully monitored use of psychotropic medications.  (AR

12  363.)

13  Dr. Montalvo's notes for the remainder of 2004 reflect monthly treatment for plaintiff's sleep

14  difficulty improved with Ambien, irritability, sadness, fear of losing control, poor memory, decreased

15  sex drive, fair to poor appetite and concentration,  (AR 375-380.)  Dr. Montalvo diagnosed major

16  depression, moderate to severe and treated plaintiff with Zoloft 50 mg.  (AR 375-380.)

17  Dr. Montalvo completed an October 25, 2004 Complete Medical Report (Mental) to note his

18  diagnosis of major depression, assessment of total temporary disability, treatment of psychotherapy and

19  medical management, and inability to determine plaintiff's prognosis.  (AR 374.)  Dr. Montalvo noted

20  that plaintiff "is in physical pain from his industrial injuries which exacerbates his major depressive

21  disorder."  (AR 374.)

22  Dr. Montalvo completed an October 26, 2004 Medical Assessment of Ability to Do Work-

23  Related Activities (Mental) to assess that plaintiff has: (1) fair ability to follow work rules, use judgment,

24  function independently, maintain attention/concentration, understand, remember and carry out detailed

25  and simple job instructions, and demonstrate reliability; (2) poor ability to relate to co-workers, deal with

26  public, interact with supervisors, understand, remember and carry out complex job instructions, behave

27  emotionally stable, and relate predictably in social situations; and (3) no ability to deal with stress.  (AR

28  371-373.)

1
*Unidentified Physician*

2        Plaintiff submitted to the Appeals Council a report of an unidentified physician of plaintiff's

3   October 25, 2004 visit.  (AR 435.)  The report notes plaintiff's history of neck and upper back pain

4   attributable to an October 31, 2003 motor vehicle accident.  (AR 435.)  Plaintiff was assessed with

5   nonspecific cervical pain, spinal stenosis, central canal, cervical spine, and neural foraminal stenosis of

6   cervical spine.  (AR 438.)  Plaintiff was recommended to be evaluated by a neurosurgeon and to be

7   treated with medication. (AR 439.) As to "work clearance and/or restrictions," the report notes "[u]sual

8   and customary employment."  (AR 439.)

9
*Non-Examining Physicians*

10       Alfred Torre, M.D. ("Dr. Torre"), a California Disability Determination Services ("DDS")

11  physician, completed a July 22, 2003 Physical Residual Functional Capacity Assessment to conclude

12  that plaintiff is able to: (1) lift/carry 50 pounds occasionally and 25 pounds frequently; (2) stand/walk

13  about six hours in an eight-hour workday; (3) sit about six hours in an eight-hour workday; (4) push/pull

14  subject to the lift/carry limitations; (5) frequently balance, kneel and crawl; and (6) occasionally climb

15  ramp/stairs, stoop and crouch.   (AR 314, 315.)   Dr. Torre precluded plaintiff from climbing

16  ladder/rope/scaffolds but noted neither manipulative, visual, communicative nor environmental

17  limitations.  (AR 315-317.)

18       On September 29, 2003, a DDS physician noted plaintiff's non-severe psychiatric condition.

19  (AR 357.)

20
*Medical Imaging*

21       December 3, 1998 x-rays of plaintiff's lumbar spine revealed degenerative spondylosis and

22  bilateral pars interarticularis defects at L5.  (AR 405.)  May 4, 1999 chest x-rays were normal.  (AR

23  410.)  June 16, 1999 medical imaging of plaintiff's abdomen were unremarkable.  (AR 415.)  May 29,

24  2001 x-rays of plaintiff's left knee and right ribs were negative.  (AR 346.)  A December 26, 2001

25  abdominal ultrasound was normal.  (AR 339.)  August 4, 2003 imaging of plaintiff's cervic spine

26  revealed "normal limits for age, no significant abnormality apparent."  (AR 324.)

27       October 31, 2003 medical imaging of plaintiff's abdomen after a motor vehicle accident revealed

28  lower lateral left rib fracture with associated lung contusion and mild degenerative joint disease.  (AR

13

421.)  October 31, 2003 medical imaging of plaintiff's thoracic spine revealed no acute traumatic deformity and minimal degenerative spondylosis.  (AR 422.)   An October 31, 2003 computed tomography ("CT") of plaintiff's cervical spine revealed possible central disc protrusion at C4-5, absence of fracture or prevertebral soft tissue swelling and mild degenerative spondylosis.  (AR 423.) October 31, 2003 medical imaging of plaintiff's lumbar spine revealed mild to moderate osteoarthritic changes.  (AR 424.)  An October 31, 2003 chest x-ray revealed a left sixth rib fracture.  (AR 425.) October 31, 2003 medical imaging of plaintiff's cervical spine revealed mild degenerative changes and preserved disc spaces.  (AR 426.)  An October 31, 2003 CT of plaintiff's pelvis was unremarkable.  (AR 427.)  November 1, 2003 chest x-rays revealed a left rib fracture with associated lung contusion.  (AR 428.)

An April 23, 2004 MRI of plaintiff's cervical spine revealed mild central spinal stenosis at C3-C4, C4-C5, C5-C6 and C6-C7 and mild right-side neural foraminal stenosis at C4-C5 and C5-C6.  (AR 429.)

### *Medications*

Plaintiff's medications have included Tramadol 50 mg, Ranitidine 150 mg, Glucophage 500 mg, Glucotrol 5 mg, Zoloft 50 mg, Zocor 20 mg, Hydrocodone, Soma and Tylenol.  (AR 203, 205.)

### Plaintiff's Activities And Testimony

### *Reports And Questionnaires*

According to a Disability Report, plaintiff worked as a mechanic during 1982-1999.  (AR 177.) Plaintiff stopped working on November 15, 1999 due to a lower back injury.  (AR 177.)  Plaintiff claimed inability to lift more than 25 pounds and to engage in prolonged standing.  (AR 178.)  Plaintiff experiences increased pain from sitting, bending, stooping and lifting.  (AR 178.)

Plaintiff completed an undated Daily Activities Questionnaire to note that on an average day he stays home, walks the dog, watches television, reads and performs light household chores.  (AR 179, 180, 181.)  Plaintiff needs no assistance to complete light work.  (AR 180.)  Plaintiff has sleeping difficulties but no longer takes sleep medication.  (AR 179.)  Plaintiff takes Zoloft once a day.  (AR 179.)  Plaintiff prepares meals once a day.  (AR 180.)  Plaintiff grocery shops once a week with his wife and is able to lift up to 25 pounds.  (AR 180.)  Plaintiff drives a car to visit family.  (AR 181.)  Plaintiff

1  has no difficulty to concentrate, to follow instructions, or to get along with family, friends, coworkers

2  or others. (AR 182, 183.) Plaintiff experience back pain after standing for three minutes to wash dishes.

3  (AR 183.) Plaintiff takes no medication for his condition. (AR 183.) Plaintiff claims that his injury

4  dissuades employers to hire him. (AR 183.) Plaintiff claims he was terminated from his job "after two

5  years of injury." (AR 183.)

6           Vocational Rehabilitation Consultant P. Steve Ramirez completed a June 19, 2003 Vocational

7  Rehabilitation Plan to note plaintiff's diagnosis of lumbosacral strain/sprain, degenerative disc disease

8  L4-5, and lumbar disc herniation L4-5 and L5-S1 and preclusion to lift/carry more than 40 pounds and

9  repetitive bending or stooping. (AR 186.) Plaintiff's workers' compensation rehabilitation provided

10  a 15-week computer service technician training program. (AR 187.)

11          Plaintiff completed a June 23, 2003 Pain Questionnaire to note that he started to experience

12  sharp, throbbing lower back pain on November 19, 1998. (AR 193.) The pain spreads to his neck,

13  shoulder, upper back and legs. (AR 193.) Plaintiff described the pain as "permanent" and "all the time"

14  with temporary relief from Tramadol 50 mg four times a day. (AR 193.) The medicine cause stomach

15  pain. (AR 193.) To relieve pain, plaintiff visits a chiropractor weekly where he is treated with a nerve

16  stimulator, receives massage from his wife, and applies hot and cold compress. (AR 194.) Plaintiff's

17  daily activities include walking and light household chores. (AR 194.) Plaintiff is able to: (1) perform

18  errands without assistance; (2) lift up to 20 pounds; (3) walk a mile; (4) stand 30 minutes; (5) sit 45

19  minutes; (6) drive a car; and (7) perform light housekeeping chores. (AR 195.)

20          Plaintiff completed an August 18, 2003 Reconsideration Disability Report to note that his lower

21  back pain spreads to his head, neck, shoulders, buttocks and legs. (AR 196.) Pain limits plaintiff's

22  physical activities so that "nobody hires me." (AR 196.) Plaintiff takes Zoloft for depression. (AR

23  196.) Plaintiff is precluded to lift more than 20 pounds and from repetitive bending and stooping. (AR

24  196.) Plaintiff sees a chiropractor weekly and takes Tramadol and Naproxen and uses a nerve stimulator.

25  (AR 197.)

26          In an undated statement, plaintiff noted his ongoing lower back treatment, including medications

27  of Tramadol, Naproxen and Ranitidine along with manual and electric nerve stimulation. (AR 203.)

28  / / /

***Plaintiff's ALJ Hearing Testimony***

At the September 9, 2004 ALJ hearing, plaintiff rejected the ALJ's offer to allow plaintiff to secure a representative and testified that plaintiff was comfortable to proceed without a representative. (AR 447.) Plaintiff testified that he completed vocational training as a computer technician three or four years prior to the hearing. (AR 450.) Plaintiff applied for computer technician jobs but was not hired. (AR 451.)

Plaintiff last worked in November 1999 as a maintenance mechanic in a cloth factory. (AR 451.) The job required plaintiff to stand, bend and lift up to 100 pounds. (AR 451-452.) Plaintiff received two months training for the job. (AR 468.)

Plaintiff believes he has been disabled since November 15, 1999 because pain to his neck, shoulders, lower back and right side. (AR 452, 453.) Plaintiff hurt his lower back in 1998 when he lifted a machine but continued to work with pain for six months. (AR 454.) Plaintiff treated with his personal chiropractor following his injury and claims his employer did not consider the injury subject to workers' compensation. (AR 454.) Plaintiff filed a workers' compensation claim to address his November 1999 injury. (AR 455.)

Plaintiff received physical therapy for his back but claims he was discharged from physical therapy because his pain "is not going to be any better." (AR 455, 456.) Plaintiff has not had surgery. (AR 455.)

Plaintiff experiences daily severe back pain. (AR 456.) Every four hours, plaintiff takes pain medication, including Hydrocodone, Tylenol and Tramodol. (AR 456.) Plaintiff's physicians have not recommended further treatment. (AR 457.) Plaintiff sees his chiropractor once every week or two weeks. (AR 458.) Chiropractic treatment provides relief for up to two hours. (AR 458.)

Plaintiff's doctor told plaintiff that his shoulder pain is "caused from my lower back injury going up to my neck and my upper shoulder." (AR 458.) Plaintiff experiences constant upper shoulder pain for which medication helps "a little bit." (AR 458, 459.) Nothing in particular increases plaintiff's upper back pain. (AR 459.) Surgery has not been recommended for plaintiff's upper back. (AR 459.) Plaintiff's pain to his upper shoulder includes his neck pain. (AR 460.)

Plaintiff has not seen a doctor for his right-side pain which is different from his lower back and

1  related pain.  (AR 460.)  Plaintiff experiences right-side pain three or four days a week.  (AR 461.)

2  Plaintiff is unable to identify a cause of the right-side pain.  (AR 461.)  Medication helps the right-side

3  pain "a little bit."  (AR 461.)

4  　　　　Plaintiff estimates that he is able to stand about two to three hours but feels bad after standing

5  for half an hour.  (AR 461.)  Plaintiff walks half a mile everyday but could not walk after he and his wife

6  walked three quarters of a mile.  (AR 461, 465.)  Plaintiff estimates he is able to lift/carry up to 20

7  pounds.  (AR 462.)  Plaintiff needs to stand after sitting for an hour to an hour and a half.  (AR 462.)

8  Plaintiff estimates that he is able to sit an hour and a half to three hours.  (AR 462.)  Plaintiff's doctors

9  restricted plaintiff to lifting 20 pounds and to avoid bending and stooping.  (AR 466.)

10  　　　　Plaintiff has been depressed since "last year."  (AR 463.)  Plaintiff feels pressure from a lack of

11  income.  (AR 463.)  For his depression, plaintiff takes Zoloft, which helped "a little bit."  (AR 464.)

12  Plaintiff has not worsened on Zoloft.  (AR 464.)

13  　　　　Plaintiff stays home, cooks, helps his wife, does laundry, washes dishes and watches television

14  "all day."  (AR 456.)  Plaintiff drives when he borrows his sister's car.  (AR 464.)

15  　　　　　　　　　***Vocational Expert Thomas C. Dachlet's ALJ Hearing Testimony***

16  　　　　Vocational expert Thomas C. Dachlet ("Mr. Dachlet") testified at the September 9, 2004 ALJ

17  hearing that plaintiff's maintenance mechanic work was heavy unskilled.  As a first hypothetical, the

18  ALJ asked Mr. Dachlet to assume a person who is: (1) age 45 with a 10th grade education and past

19  relevant work experience as plaintiff described; (2) has a combination of severe impairments; (3) retains

20  residual functional capacity to lift/carry 50 pounds occasionally and 25 pounds frequently; (4) is able

21  to stand, walk and sit up to six hours each; and (5) is able to occasionally stoop and bend.  (AR 469.)

22  Mr. Dachlet noted that such person would be unable to perform plaintiff's past relevant work but is able

23  to perform jobs in the national economy and including hand packer (15,373 jobs in California and

24  153,730 jobs nationally), production worker (15,477 jobs in California and 154,770 jobs nationally),

25  fabricator/assembler (15,475 jobs in California and 154,750 jobs nationally), and cashier (17,538 jobs

26  in California and 175,380 jobs nationally).  (AR 469.)

27  　　　　As a second hypothetical, the ALJ asked Mr. Dachlet to assume the same vocational parameters

28  as in the first hypothetical and a person who: (1) has a combination of severe impairments; (2) retains

residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently; (3) is able to stand three hours total; (4) is able to walk half a mile; and (5) is able to sit three hours. (AR 470.) Mr. Dachlet noted that such person would be unable to perform plaintiff's past work or work of more than six hours per day. (AR 470.)

### The ALJ's Findings

With his September 27, 2004 decision, the ALJ identified the issues as whether plaintiff is under a disability, and if so, when his disability commenced and its duration. (AR 107.) In concluding that plaintiff is not disabled and thus not entitled to disability insurance benefits, the ALJ found:

1.   Plaintiff has degenerative disc disease but lacks an impairment or combination of impairments listed in or medically equal to an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").

2.   Plaintiff's allegations of pain and limitations are not credible.

3.   Plaintiff has the residual functional capacity to perform physical exertion and nonexertional requirements of work limited to lifting/carrying no more than 50 pounds occasionally and 25 pounds frequently and sitting, standing or walking six hours each in a workday with occasional stooping and bending.

4.   Plaintiff is unable to perform his past relevant work as a mechanic.

5.   Plaintiff's residual functional capacity for the full range of medium work is reduced by the above limitations of occasional stooping and bending.

6.   Plaintiff is not disabled based on an exertional capacity for medium work, age, education and work experience and using 20 C.F.R. § 404.1569 and section 203.26 of the Medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2.

7.   Although plaintiff's additional nonexertional limitations prevent plaintiff to perform the full range of medium work, he is able to perform a significant number of jobs in the national economy and including hand packer (15,373 jobs in California and 153,730 jobs nationally), production worker (15,477 jobs in California and 154,770 jobs nationally), fabricator (15,475 jobs in California and 154,750 jobs nationally), and cashier (17,538 jobs in California and 175,380 jobs nationally). (AR 111.)

**DISCUSSION**

**Standard Of Review**

Congress has provided limited judicial review of a Commissioner's decision made through an ALJ.  *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings).[2]  Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420 (1971), but less than a preponderance,  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420; *Sandgathe*, 108 F.3d at 980.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion.  *Sandgathe*, 108 F.3d at 980; *Jones,* 760 F.2d at 995.  If there is substantial evidence to support the administrative finding, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

This Court reviews the ALJ's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).  "A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

---

[2]      "The district court properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).

1    Plaintiff bears the burden to prove that he is disabled which requires presentation of "complete

2    and detailed objective medical reports of his condition from licensed medical professionals." *Meanel*

3    *v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

4    "Failure to prove disability justifies a denial of benefits." *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th

5    Cir. 2005); *see Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir.1995), *cert. denied*, 517 U.S. 1122, 116

6    S.Ct. 1356 (1996).   Plaintiff must furnish medical and other evidence about plaintiff's medical

7    impairments. 20 C.F.R. §§ 404.1512(a), 416.912(a); ("[Y]ou must bring to our attention everything that

8    shows that you are blind or disabled."); 20 C.F.R. §§ 404.1514, 416.914 ("We need specific medical

9    evidence to determine whether you are disabled or blind.   You are responsible for providing that

10   evidence.")

11   _____Here, plaintiff claims disability since November 15, 1999 due to low back pain and stomach

12   ulcer. (AR 107, 167.)  In his opening brief, plaintiff references diabetes with neuropathy, degenerative

13   disc disease, lumbar spine protrusions and severe and major depression.

14   With the above standards in mind, this Court turns to plaintiff's criticism of the ALJ's September

15   27, 2004 decision.

16   **New And Material Evidence**

17   Plaintiff contends that new, material evidence warrants remand in that the ALJ proceeded with

18   a hearing when plaintiff was unrepresented and failed to assist plaintiff to develop the medical record,

19   "including the clarification and development of the opinions of the treating physicians."   The

20   Commissioner responds that plaintiff has not satisfied his burden to prove existence of new, material

21   evidence to warrant remand.

22   An ALJ's factual findings, supported by substantial evidence, are conclusive.  *See* 42 U.S.C. §

23   405(g); *Mayes v. Massanari*, 276 F.3d 453, 458-459 (9th Cir. 2001).  A remand is appropriate under 42

24   U.S.C. § 405(g) "where the new evidence is material and there is good cause for the failure to

25   incorporate such evidence in the record in a prior proceeding." *Booz v. Secretary of Health and Human*

26   *Services*, 734 F.2d 1378, 1380 (9th Cir. 1984); *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984).

27   In 1980, Congress amended 42 U.S.C. § 405(g) to add a materiality requirement "at least in part to limit

28   the court's ability to remand cases for consideration of new evidence."  *Ward v. Schweiker*, 686 F.2d

1  762, 764 (9th Cir. 1982) (citing *Carter v. Schweiker*, 649 F.2d 937, 942 (2nd Cir. 1981)).

2       "To meet the materiality requirement, the new evidence offered must bear directly and

3  substantially on the matter in dispute." *Burton*, 724 F.2d at 1417. "[E]vidence is sufficiently material

4  to require a remand, 'only where there is a *reasonable possibility* that the new evidence would have

5  changed the outcome of the [Commissioner's] determination had it been before him.'" *Booz*, 734 F.2d

6  at 1380 (quoting and adopting *Dorsey v. Heckler*, 702 F.2d 597, 604-605 (5th Cir. 1983); italics in

7  original). New evidence is material if it pertains to the time period at issue. *See Mayes*, 276 F.3d at 462-

8  463. "The good cause requirement often is liberally applied where . . . there is no indication that a

9  remand for consideration of new evidence will result in prejudice to the [Commissioner]." *Burton*, 724

10  F.2d at 1417-1418. "If new information surfaces after the Secretary's final decision and the claimant

11  could not have obtained that evidence at the time of the administrative proceeding, the good cause

12  requirement is satisfied." *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985). "To demonstrate good

13  cause, the claimant must demonstrate that the new evidence was unavailable earlier." *Mayes*, 276 F.3d

14  at 463 (citing *Key*, 754 F.2d at 1551.

15       Plaintiff fails to identify "two opinions" which the ALJ "should have obtained." As noted by

16  the Commissioner, plaintiff fails to indicate the doctors who provided the "opinions" and their findings

17  to support remand. Plaintiff fails to explain materiality of new evidence and its potential effect on the

18  ALJ's decision. This Court is not in a position to speculate as to plaintiff's unidentified new evidence

19  and its potential materiality. Plaintiff does not explain meaningfully his failure to submit evidence

20  earlier. The record clearly indicates that plaintiff voluntarily decided to forego a representative at the

21  ALJ hearing but secured his current counsel who submitted records to the Appeals Council. (AR 15-17,

22  21-95, 365-440.) After it considered the "new evidence," the Appeals Council found no basis to change

23  the ALJ's decision. (AR 11.) Plaintiff's "new evidence" appears to have been considered by the

24  Appeals Council and thus is not new evidence in that the Appeals Council's decision "constitutes the

25  final decision and word of the Secretary." *Bunnell v. Sullivan*, 912 F.2d 1149, 1152 (1990), *as modified*,

26  947 F.2d 341 (9th Cir. 1991) (en banc). Plaintiff fails to substantiate new and material evidence to

27  warrant remand.

28  / / /

21

**Evaluation Of Medical Evidence**

Plaintiff appears to criticize the ALJ's evaluation of the medical evidence.  The Commissioner responds that the ALJ and Appeals Council properly evaluated the medical evidence.

***Other Alleged Impairments***

The ALJ found that plaintiff has degenerative disc disease which does not meet, equal or approach the level of severity discussed in applicable listings of the Listing of Impairments.  (AR 108.) The ALJ noted that plaintiff "also suffers from a major depressive disorder . . . but such has not met the 12-month durational requirement, and is therefore considered to be a nonsevere impairment."  (AR 108.)

Plaintiff argues the ALJ "mostly ignored" other impairments, such as, "diabetes with neuropathy."  As detailed above, plaintiff treated for diabetes mellitus but was not limited by it and was not diagnosed for neuropathy.  The numbness of which plaintiff complained of on October 25, 2004 was not diagnosed as neuropathy and the examiner found "negative" for peripheral neuropathy.  (AR 53, 54.) Plaintiff fails to substantiate a finding of absent ankle reflexes from diabetes.  Although a couple of notations reflect diabetes difficulties because of plaintiff's non-compliance and "not watching diet" (AR 390, 396), many notations reflect treatment to control plaintiff's diabetes.  (AR 323, 331-334, 336-338, 340, 342, 349-351, 353, 355, 388-393, 400, 401.)  Plaintiff bears the burden to prove that he has an impairment that meets or equals an impairment in the Listing of Impairments.  *Tackett*, 180 F.3d at 1097. As a matter of law, the ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments," in particular when the ALJ's evaluation of the evidence is an adequate statement of the "foundations on which the ultimate factual conclusions are based."  *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).  In the absence of evidence that plaintiff's diabetes cannot be controlled despite his efforts to follow a prescribed program, plaintiff fails to demonstrate an impairment from diabetes or that the ALJ erred to evaluate plaintiff's diabetes.

Plaintiff also points to his "severe depression."  The ALJ and Appeals Council noted the absence of evidence that plaintiff's depression met the 12-month durational requirement.  (AR 11, 108.)  As noted by the Commissioner, the record reflects that plaintiff treated with psychiatrist Dr. Montalvo briefly, no more than six months.  Nonetheless, the Appeals Council addressed Dr. Montalvo's assessment and properly rejected it:

The treating records from Dr. Montalvo do not support this work restriction, nor the restrictions listed on the medical assessment that states you [plaintiff] cannot deal with work stress and would be seriously limited in other areas of occupational, performance and social adjustments. The treating records show that at the time of the assessments you had six visits with Dr. Montalvo. The reports show that you were improving with treatment and Zoloft, but were still having irritability and libido problems. The records indicate improvement and do not reflect the level of work-related functional problems that are stated on the assessment form. The Council, therefore, does not give any weight to [this] opinion. (AR 11.)

Plaintiff points to no error in the Appeals Council's evaluation of Dr. Montalvo's assessment which was unsupported by Dr. Montalvo's limited treatment and findings. A treating physician's opinion, whether or not it is contradicted, may be rejected if the opinion is "brief and conclusory in form with little in the way of clinical findings to support its conclusion." *Magallanes*, 881 F.2d at 751.

### *Residual Functional Capacity*

Plaintiff challenges the ALJ's finding that plaintiff has the residual functional capacity for the full range of medium work subject to lifting/carrying up to 50 pounds occasionally and 25 pounds frequently and sitting, standing or walking six hours each in a workday with occasional stooping and bending. (AR 111.) The Commissioner responds that substantial evidence supports the ALJ's finding that plaintiff was not disabled although he is restricted to limited medium work.

The ALJ's residual functional capacity assessment is supported by Dr. Kucera, who precluded plaintiff from heavy lifting and repeated bending and stooping and diagnosed lower back sprain/strain, underlying asymptomatic pars defect L5, early degenerative changes and absence of peripheral radiculopathy. (AR 263, 264.) Dr. Torre further supported the ALJ's residual functional capacity assessment and concluded that plaintiff is able to lift/carry 50 pounds occasionally and 25 pounds frequently and stand, walk and sit six hours in an eight-hour workday. (AR 314, 315.)

Plaintiff takes an unsupported jab as to Dr. Rios' opinion. Dr. Rios' records reveal his consistent "conservative treatment" of medication, physical therapy and exercise and his consistent limitations of no repetitive bending or stooping and no heavy work or lifting. (AR 267-270, 273-278, 279, 289, 292, 299, 301, 303, 306, 368, 370.) Dr. Rios noted plaintiff's diminishing complaints of lower back pain and that plaintiff's low back pain responds to conservative treatment. (AR 291, 301.) As of November 5, 2004, Dr. Rios assessed that plaintiff is able to: (1) lift/carry up to 10 pounds continuously, up to 20 pounds frequently, and up to 50 pounds occasionally; (2) sit, stand and/or walk four hours in an eight-

hour workday and/or without interruption; (3) use his feet and hands without limitation; (4) reach, handle and feel frequently; and (5) balance, crouch and push/pull occasionally. (AR 366-368.) As of February 2, 2005, Dr. Rios noted that plaintiff "is not required to lay down 1-2 hours/day." (AR 370.) The Appeals Council properly gave weight to Dr. Rios' assessments in that "they are consistent with all of Dr. Rios' reports . . . and his latest assessment, that the claimant is restricted from heavy lifting, repetitive bending and stooping. (AR 11.) Dr. Rios' limitations are consistent with those of the ALJ to eliminate need for the ALJ or the Appeals Council to reject Dr. Rios' opinion. Contrary to plaintiff's assertion, Dr. Rios did not conclude that plaintiff was unable to work a full day "due to need to elevate his legs." Plaintiff points to no error in the ALJ's residual functional capacity finding.

### Plaintiff's Credibility

Plaintiff challenges the ALJ's finding that plaintiff's allegations of pain and limitations are not credible and argues that the ALJ's credibility evaluation was insufficient. The Commissioner responds that the ALJ and Appeals Council properly evaluated plaintiff's credibility.

"Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989); *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988). "An ALJ cannot be required to believe every allegation of disabling pain." *Fair*, 885 F.2d at 603. An ALJ "may disregard unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995).

A claimant bears an initial burden to "produce objective medical evidence of underlying 'impairment,' and must show that the impairment, or a combination of impairments, 'could reasonably be expected to produce pain or other symptoms.'" *Baston*, 359 F.3d at 1196 (quoting *Smolen*, 80 F.3d at 1281)). If a claimant satisfies such initial burden and "if the ALJ's credibility analysis of the claimant's testimony shows no malingering, then the ALJ may reject the claimant's testimony about severity of symptoms with 'specific findings stating clear and convincing reasons for doing so.'" *Baston*, 359 F.3d at 1196 (quoting *Smolen*, 80 F.3d at 1284). "If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958.

If an ALJ's credibility finding is supported by substantial evidence in the record, a reviewing court may not engage in second-guessing. *Thomas*, 278 F.3d at 959.  A reviewing court will not reverse an ALJ's credibility determinations "based on contradictory or ambiguous evidence." *Johnson*, 60 F.3d at 1434 (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)).  "So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence." *Bunnell*, 947 F.2d at 346. Moreover, "the ALJ is entitled to draw inferences 'logically flowing from the evidence.'" *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

In *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), the Ninth Circuit commented:

> In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (quoting *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995)); 20 C.F.R. § 404.1529(c).  An ALJ's finding that a claimant generally lacked credibility is permissible basis to reject excess pain testimony.

*See also* SSR 96-7p.[3]

An ALJ may consider the following factors to determine the credibility of a claimant's allegations of disabling pain:

1.   The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

2.   Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

3.   Type, dosage, effectiveness, and adverse side-effects of pain medication;

4.   Treatment, other than medication, for pain relief;

---

[3]   SSR 96-7p sets out factors to assess a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, claimant receives or has received for relief of pain or other symptoms; (6) measures other than treatment claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

5.      Functional restrictions;

6.      Claimant's daily activities;

7.      Unexplained, or inadequately explained, failure to seek treatment or to follow up a prescribed course of treatment; and

8.      Ordinary techniques to test a claimant's credibility.

*Bunnell*, 947 F.2d at 346; *see* 20 C.F.R. §§ 404.1529, 416.929.

The ALJ sufficiently addressed plaintiff's credibility:

> Having considered the overall evidence presented, the undersigned does not give credence to the claimant's subjective complaints as they are not totally supported by objective evidence of record. Although claimant alleges severe pain, it is significant he is not receiving treatment consistent with a severe pain syndrome; e.g., acupuncture, injections, a TENS unit, or treatment at a pain management clinic. . . . The claimant's limitations of daily activities appear to be somewhat selective and self-imposed. There is a failure of proof on the part of the claimant and a lack of objective findings to substantiate a more restricted functional assessment. (AR 109-110.)

The ALJ properly discounted plaintiff's alleged limitations in that they were not commensurate to plaintiff's conservative treatment. According to the medical record, plaintiff received neither biofeedback, acupuncture or aggressive pain management treatment. Plaintiff's pain was generally managed with medication and physical therapy. (AR 267-270, 273-275, 276-278, 279, 289, 292, 299, 301, 303, 306, 368, 370.) *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered treating physician's failure to prescribe and claimant's failure to request "any serious medical treatment for this supposedly excruciating pain."); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) ("conservative treatment" suggests "a lower level of both pain and functional limitation."); *Bunnell*, 947 F.2d at 346 ("unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" is relevant to assess credibility); *see also Flaten v. Secretary of Health & Human Servs.*, 44 F.3d 1453, 1464 (9th Cir. 1995) (ALJ entitled to draw inference from general lack of care). Furthermore, plaintiff was not a surgical candidate. (AR 459.)

Other evidence diminishes plaintiff's credibility. Dr. Florio commented that "there is nothing at all to indicated his symptoms would be that severe. He appears to be a significant symptom magnifier." (AR 255.) Dr. Florio further noted that plaintiff "appears to have symptoms that are far and away greater than what one would expect from the physical examination and abnormal objective

26

findings. He tends to greatly overstate his symptoms and his ranking of his symptoms on a scale of 1-10 as a 10 is absurd to say the least." (AR 256.) Dr. Florio found plaintiff "unmotivated." (AR 256.)

Plaintiff testified that he able to stand and sit up to three hours (AR 461, 462), that he walks a half mile each day (AR 461, 465), and that Zoloft has prevented worsened depression. (A464.) As of June 23, 2003, plaintiff noted his daily activities include walking and that he is able to walk a mile. (AR 195.) Plaintiff further noted that he cooks, helps his wife, grocery shops, does laundry, washes dishes, drives a car, performs errands without assistance, performs light housekeeping, and watches television. (AR 180, 181, 195, 456, 464.) Plaintiff acknowledged that he has no difficulty to concentrate, to follow instructions, or to get along with family, friends, coworkers or others. (AR 182, 183.)   An ALJ may rely on evidence of a claimant's daily activities to discount pain allegations. "[I]f, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." *Fair*, 885 F.2d at 603.

Specific, clear and convincing reasons support the ALJ's finding that plaintiff's allegations as to his limitations are not credible. (AR 20.) *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) ("The ALJ pointed out several areas in which the appellant's testimony or behavior was inconsistent with his own statements or actions, as well as with the medical evidence.") Plaintiff overstated his alleged limitations. Based on the substantial evidence to support the ALJ's credibility determination, this Court does not second guess the ALJ.

## CONCLUSION AND RECOMMENDATIONS

For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ properly concluded plaintiff is not disabled. This Court further finds that the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court RECOMMENDS to:

1.     DENY plaintiff's request to reverse the Commissioner's decision to deny plaintiff disability insurance benefits or to remand for further proceedings; and

2.     DIRECT this Court's clerk to enter judgment in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against plaintiff Amador Gonzaga and to close this

1    action.

2         These findings and recommendations are submitted to the district judge assigned to this action,

3    pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304.  No later than September 26,

4    2006, any party may file written objections to these findings and recommendations with the Court and

5    serve a copy on all parties and the magistrate judge and otherwise in compliance with this Court's Local

6    Rule 72-304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and

7    Recommendations."  Responses to objections shall be filed and served no later than October 6, 2006 and

8    otherwise in compliance with this Court's Local Rule 72-304(d).  A copy of the responses shall be

9    served on the magistrate judge.  The district judge will review the magistrate judge's findings and

10   recommendations, pursuant to 28 U.S.C. § 636(b)(1)(c).  The parties are advised that failure to file

11   objections within the specified time may waive the right to appeal the district judge's order.  *Martinez*

12   *v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

13        IT IS SO ORDERED.

14   **Dated:    September 11, 2006             /s/ Lawrence J. O'Neill**
     66h44d                          UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28